10-12

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ALASKA RIGHT TO LIFE POLITICAL
ACTION COMMITTEE; MICHAEL W.
MILLER,

      *Plaintiffs-Appellees,*

      v.

JEFFREY M. FELDMAN; NANCY
NOLAN; PATRICIA COLLINS; BEN J.
ESCH; THOMAS NAVE; PETER
ASCHENBRENNER; RICHARD L.
BURTON; ETHEL L. STATON,

      *Defendants-Appellants,*

STEVE VAN GOOR,

      *Defendant-Appellee.*

No. 05-35902

D.C. No.
CV-04-00239-A-
RRB



JAN 0 2 2008

CLERK, U.S. DISTRICT COURT
ANCHORAGE, A.K.

12877

ALASKA RIGHT TO LIFE POLITICAL
ACTION COMMITTEE; MICHAEL W.
MILLER,

        *Plaintiffs-Appellants,*

        v.

JEFFREY M. FELDMAN; NANCY
NOLAN; PATRICIA COLLINS; BEN J.
ESCH; THOMAS NAVE; PETER
ASCHENBRENNER; RICHARD L.
BURTON; ETHEL L. STATON; STEVE
VAN GOOR,

        *Defendants-Appellees,*

        and

MARK WOELBER; LOUISE DRISCOLL;
DEBORAH RICKER; GAIL WELT;
ANNETTE RAVITHIS,

        *Defendants.*

No. 05-36027
D.C. No.
CV-04-00239-RRB
OPINION

Appeal from the United States District Court
for the District of Alaska
Ralph R. Beistline, District Judge, Presiding

Argued and Submitted
August 6, 2007—Anchorage, Alaska

Filed September 21, 2007

Before: J. Clifford Wallace, John T. Noonan, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Paez

## SUMMARY

### Civil Litigation and Procedure/Jurisdiction

The court of appeals affirmed a judgment of the district court in part, vacated in part, and remanded. The court held that without a clearer showing that state judicial candidates would reasonably risk discipline by responding to a plaintiff's questionnaire soliciting views on issues such as abortion and assisted suicide, the record was unfit to review the plaintiff's First Amendment claims.

About one month before Alaska's 2004 general election, appellees including the Alaska Right to Life Political Action Committee (ARL PAC) and Michael Miller brought suit in district court against appellants including named members of the Alaska Commission on Judicial Conduct and the Alaska Bar Association, challenging the constitutionality of provisions in the Alaska Code of Judicial Conduct including Canon 5A(3)(d)(i) and (ii), which prohibits pledges and promises of conduct in judicial office and statements that commit or appear to commit a judicial candidate to a particular view or decision. ARL PAC alleged that these restrictions violated the First Amendment by chilling responses to a questionnaire they circulated prior to the 2002 elections in which they had solicited Alaska state judicial candidates' views on issues such as abortion and assisted suicide. ARL PAC did not circulate a questionnaire to any of the judges who were seeking retention in the 2004 election prior to filing suit, and neither the Commission nor the Bar ever threatened to enforce any provision of the Code against judges who might have chosen to respond to such a questionnaire. The district court nonetheless concluded that ARL PAC and Miller's suit was justiciable and invalidated Canon 5A(3)(d)(i) and (ii), but the court upheld Canon 3E(1), which requires a judge to disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned. The court denied ARL

PAC's motion for attorney fees and costs against the Commission, but granted attorney fees and costs against ARL PAC to appellee Steve Van Goor, the head of the Bar's disciplinary commission.

The Commission and the Bar appealed. ARL PAC cross-appealed.

[1] In considering whether the record is fit for review, a court begins with the principle that it cannot decide constitutional questions in a vacuum. A party bringing a preenforcement challenge must present a concrete factual situation to delineate the boundaries of what conduct the government may or may not regulate without running afoul of the Constitution. The court of appeals lacked such a "concrete factual situation" here. Although the Commission is statutorily authorized to inquire into an allegation that a judge has acted in violation of the Code, the record did not show that the Commission had even contemplated that such an inquiry might be warranted were a judge to respond to ARL PAC's questionnaire. No judge requested—and the Commission therefore did not issue—a formal advisory opinion on the propriety of responding to the questionnaire. [2] The fact that Alaska's high court had not yet had an opportunity to construe the canons at issue or to apply them to the speech ARL PAC and Miller hoped to solicit further militated in favor of declining jurisdiction. [3] Without a clearer showing that a judge would reasonably risk discipline by responding to the questionnaire, the record was therefore unfit to review ARL PAC's First Amendment claims.

[4] ARL PAC and Miller's failure to demonstrate a likelihood of enforcement of the challenged canons against the judicial speech they wanted to solicit also weighed against a conclusion that withholding federal jurisdiction would impose hardship. [5] Not only was there a lack of any credible threat of enforcement, but neither ARL PAC or Miller was potentially subject to enforcement of the Code. Because the organi-

zation would not itself have risked civil sanction or criminal penalty, it did not suffer the constitutionally recognized injury of self-censorship. **[6]** Nor would delaying adjudication prejudice ARL PAC and Miller's ability to vindicate their constitutional claims later, with a better factual record.

**[7]** The court of appeals' decision rendered ARL PAC and Miller's appeal from the denial of attorney fees and costs against the Commission moot; because they were no longer the prevailing parties, they were not entitled to fees under 42 U.S.C. § 1988. ARL PAC and Miller's appeal from the denial of their challenge to Canon 3E(1) was also moot. **[8]** The district court did not abuse its discretion by awarding Van Goor attorney fees and costs. Because ARL PAC never distributed its questionnaire to any attorney-applicants, Van Goor never had an opportunity even to consider enforcing the challenged canons. **[9]** The district court's order granting summary judgment and the judgment had to be vacated and the case had to be remanded with instructions to dismiss ARL PAC and Miller's action.

---

## COUNSEL

James Bopp, Jr., Thomas J. Marzen, Anita Y. Woudenberg, Terre Haute, Indiana, and William F. Sherman, Anchorage, Alaska, for plaintiffs-appellants Alaska Right to Life Political Action Committee and Michael Miller.

Jan Hart DeYoung, Anchorage, Alaska, for defendants-appellants Jeffrey M. Feldman, Nancy Nolan, Patricia Collins, Ben J. Esch, Thomas Nave, Peter Aschenbrenner, Richard L. Burton, and Ethel L. Staton.

Neil T. O'Donnell, Anchorage, Alaska, for defendant-appellee Steve Van Goor.

---

## OPINION

PAEZ, Circuit Judge:

In October 2002, the Alaska Right to Life Political Action Committee ("ARL PAC") circulated a questionnaire to the twelve Alaska state court judges who were seeking retention votes in the then-upcoming November 2002 election. The questionnaire solicited the judges' views on a variety of legal and political issues such as abortion and assisted suicide. Only four judges responded. None indicated a view with respect to any of the positions listed in the questionnaire but all provided explanations for their decisions not to participate, including concern that responding would require subsequent recusal, provisions of the Alaska Code of Judicial Conduct ("Code") that prohibit judges from pledging, promising, or committing to particular conduct in judicial office, one judge's personal code of judicial ethics, and "advice from Judicial Conduct Commission in my state."

In October 2004, approximately one month prior to Alaska's 2004 general election, ARL PAC and individual plaintiff-appellant Michael Miller (collectively "Plaintiffs") brought suit against eight named members of the Alaska Commission on Judicial Conduct ("Commission") and six named members of the Disciplinary Commission of the Alaska Bar Association ("Bar"), challenging the constitutionality of three provisions in the Alaska Code of Judicial Conduct ("Code"): (1) requiring disqualification from any proceeding in which a judge's impartiality might reasonably be questioned; (2) prohibiting judicial candidates from making pledges or promises of particular conduct in judicial office; and (3) restricting statements that commit or appear to commit a judicial candidate to a particular view or decision regarding a case likely to come before the court. ARL PAC and Miller alleged that the two canons containing these three restrictions chilled judicial candidates from responding to their survey, in violation of the First Amendment. ARL PAC

did not circulate a questionnaire to any of the ten judges who
were seeking retention in the 2004 election prior to the filing
of the Complaint, and neither the Commission nor the Bar
ever threatened to enforce any provision of the Code against
judges who might have chosen to respond to such a question-
naire. The district court nonetheless concluded that ARL PAC
and Miller's suit was justiciable. On the merits, the court
invalidated the canon that prohibits pledges and promises of
conduct in judicial office and statements that commit or
appear to commit a judicial candidate to a particular view or
decision but rejected Plaintiffs' challenge to the canon requir-
ing disqualification from proceedings in which a judge's
impartiality might reasonably be questioned. The parties
cross-appealed. ARL PAC and Miller also appealed the dis-
trict court's orders denying their motion for attorneys' fees
and costs against the Commission and granting Defendant-
Appellee Steve Van Goor's motion for attorneys' fees and
costs against Plaintiffs.

Because ARL PAC and Miller's constitutional challenges
were not ripe, we vacate the district court's order and judg-
ment and remand with instructions to dismiss. Without a more
fully developed factual record, including evidence of some
real threat of enforcement, and without a showing that with-
holding federal adjudication would impose hardship on Plain-
tiffs, we conclude that the district court should have declined
jurisdiction for lack of a justiciable case or controversy. This
conclusion renders moot Plaintiffs' appeal from the order
denying its motion for attorneys' fees and costs against the
Commission and their motion to dismiss the portion of their
appeal regarding their challenge to the constitutionality of
Alaska's disqualification clause. We affirm the district court's
order granting attorney's fees and costs to Van Goor.

I.

Alaska selects its Supreme Court justices and lower court
judges through a nomination and appointment procedure.

When a vacancy arises on the state bench, the Alaska Judicial Council ("Council")[1] nominates two or more candidates, one of whom the governor then appoints to the position. Alaska Const. art. IV, § 5. Justices and judges are subject to a non-partisan retention vote during the first general election that takes place more than three years after their appointment to the bench. *Id.* § 6.[2] Thereafter, each Justice stands for retention every ten years and each judge stands for retention every six years. *Id.*

Among its other duties, the Alaska Supreme Court is charged with "mak[ing] and promulgat[ing] rules governing the administration of all courts," *id.* § 15, including the Alaska Code of Judicial Conduct. These two appeals concern two canons of the Code: Canon 3E(1), which requires that "a judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned," and Canon 5A(3)(d), which establishes that:

> [a] candidate for judicial office[3] . . . (d) shall not: (i) make pledges or promises of conduct in judicial office other than to faithfully and impartially perform the duties of the office; (ii) make statements that commit or appear to commit the candidate to a

---

[1]The Council comprises three attorneys who are selected by the governing body of the state bar; three non-attorneys who are appointed by the governor; and the Chief Justice of the Alaska Supreme Court. *See* Alaska Const. art. IV, § 8.

[2]The Alaska Constitution only provides for the Supreme Court and the Superior Courts. The Court of Appeals and the district court were separately established by statute; similar merit selection procedures to those established in Article IV of the Alaska Constitution for Supreme Court justices and Superior Court judges apply to judges on these two other courts. *See* http://www.ajs.org/js/AK_methods.htm (explaining selection and retention procedures).

[3]The commentary to the canons defines a candidate for judicial office as one "seeking selection for or retention in judicial office, whether by election or appointment."

particular view or decision with respect to cases,
controversies or issues that are likely to come before
the court.

Subclause (i) of Canon 5A(3)(d) is commonly referred to as
a "pledge and promise clause;" subclause (ii) is known as a
"commit clause." Only the Alaska Supreme Court may
impose sanctions against judges for violations of the Code,
*see* Alaska Stat. §§ 22.30.011(d)(1)(2), 22.30.070(b); that
court therefore has exclusive authority definitively to interpret
the Code's provisions.

The Commission,[4] however, bears the initial burden of
investigating allegations of judicial misconduct, including
alleged violations of the Code. Alaska Stat. § 22.30.011(a),
(b). After conducting an investigation and hearing, the Com-
mission may either exonerate the judge or "refer the matter to
the supreme court with a recommendation that the judge be
reprimanded, suspended, removed, or retired from office or
publicly or privately censured by the supreme court." *Id.*
§ 22.30.011(d). In addition to its investigation and recommen-
dation duties, Rule 19(a) of the Commission's Rules of Proce-
dure authorizes, but does not require, the Commission to issue
a formal advisory opinion upon written request of a state judi-
cial officer; such an opinion provides an absolute defense in
any subsequent disciplinary proceedings based on that con-
duct. Pursuant to Rule 19(d), however, informal verbal guid-
ance provided by Commission members and staff has no legal
effect and does not provide a recognized defense to a later
disciplinary charge.

The Disciplinary Commission of the Alaska Bar Associa-
tion is an entirely separate entity charged with "supervis[ing]

---

[4]The Commission consists of nine members: three state court justices or
judges, three bar members who have practiced law in Alaska for at least
ten years, and "three persons who are not judges, retired judges, or mem-
bers of the state bar." Alaska Stat. art. IV, § 10.

the investigation of all complaints against attorneys." Bar
Counsel R. 10(c)(1)(2); *see also* Bar Counsel R. 11(a)(7)
(providing that appointed Bar Counsel will "investigate
alleged misconduct of attorneys"). While the Bar has author-
ity to enforce Alaska Rule of Professional Conduct 8.2(b),
which requires that lawyers who are candidates for judicial
office "comply with the applicable provisions of the Code of
Judicial Conduct," and therefore derivatively to interpret the
Code of Judicial Conduct, it has never done so. This power
presumably applies only prior to an individual attorney's ini-
tial appointment to the bench, as a judicial candidate seeking
a retention vote is already a judicial officer subject to the
Commission's enforcement of the Code.

In October 2002, ARL PAC, which describes itself as "a
not-for-profit membership corporation organized to provide
assistance to the unborn child and to promote social welfare
and the common good and general welfare of the people of
the States of Alaska," circulated a questionnaire to the twelve
judges who were seeking retention in the upcoming Novem-
ber 2002 election. The questionnaire listed nine positions
relating to abortion, assisted suicide, in vitro fertilization and
cloning, wrongful life, and wrongful birth and asked respon-
dents to check "Agree," "Disagree," "Undecided," or "De-
cline" in response to each position.[5] A footnote to the

---

[5]One item on abortion, for example, asked candidates to indicate their
position with respect to this statement: "Recognizing the judicial obliga-
tions to follow binding precedents of higher courts and applicable consti-
tutional and statutory provisions, to honor stare decisis, and to decide any
future case based on the law and facts of that case, in accord with the posi-
tion of the Alaska Right to Life Committee, I believe that the unborn child
is biologically human and alive and that the right to life of human beings
should be respected at every stage of their biological development."

The item relating to in vitro fertilization asked for candidates' position
vis-à-vis the following: "Recognizing the judicial obligation to follow
binding precedents of higher courts and applicable constitutional and stat-
utory provisions, to honor stare decisis, and to decide any future case
based on the law and facts of that case, in accord with the position of the
Alaska Right to Life Committee, I believe that human beings whose lives
begin by in vitro fertilization or cloning and who exist outside the body
of a woman are not personal property and should be treated in accord with
their best interests in any dispute over their disposition."

"Decline" option stated that checking this response indicated the judge's good faith belief that "under a reasonable construction of applicable Canons of Judicial Conduct or because my recusal would be subsequently required, I must decline to respond to this particular question." A cover letter from ARL PAC's executive director Karen Vosburgh explained the organizations's intention to "inform interested voters of your response" and further stated that "if you choose not to respond to our questionnaire, we will advise our members to vote for non-retention."

On October 16, 2002, the Commission's executive director Marla Greenstein sent Vosburgh a letter that expressed her "concerns with Alaska judges responding to the questionnaire in any other way than 'decline.' "[6] In Greenstein's view,

> questions that reflect a pre-judgment of a controversial issue or a judicial philosophy that could predict the outcome in a case are to be avoided. So too, questions that, if answered, are likely to lead to disqualification. . . . It is my professional opinion that judges who answer the questions in your questionnaire would be creating situations that would require them to be disqualified from sitting on cases involving those issues.

Greenstein also referenced the United States Supreme Court's decision in *Republican Party of Minnesota v. White*, 536 U.S. 765 (2002), which struck down a provision of Minnesota's code of judicial conduct that forbid any candidate for judicial office from " 'announc[ing] his or her views on disputed legal or political issues.' " *Id.* at 768. Greenstein noted that the Alaska Code did not contain such a clause, that distinguishable provisions of the Alaska Code restricted judicial speech, and that *White* arose in the context of a contested judicial

---

[6]The record does not reflect how Greenstein learned about the questionnaire.

12888      ALASKA RIGHT TO LIFE v. FELDMAN

election scheme rather than Alaska's non-partisan retention scheme. Greenstein copied this letter to all Alaska judges.

Of the twelve questionnaires it distributed, ARL PAC received four responses. Justice Walter Carpenti checked "Decline" in response to each question and, on each page of the questionnaire, handwrote "might" in place of "would" in the footnoted phrase "my recusal would be subsequently required." In an accompanying letter, which, like Greenstein's letter was dated October 16, 2002, Justice Carpenti explained, "I am not at all certain that responding to your group's questions is allowed under the Alaska code and that it would not subject me to later recusal." He did, however, list three cases in which he participated as an Alaska Supreme Court justice that "rais[ed] some of the issues covered in your questionnaire."

Judge Charles R. Pengilly checked "Decline" in response to all nine questions and submitted a letter, also dated October 16, 2002, expressing his uncertainty as to whether the Supreme Court's decision in *White* had any impact on the constitutionality on Alaska's own Code of Judicial Conduct. He also relayed that he had discussed the questionnaire with Greenstein, who "shares my ambivalence about the impact of *White* . . . but does advise against responding to your questions on the ground that recusal would be required in the event any of these issues come [sic] before the court." He concluded, "I hesitate to answer only because it is far from clear that judges in Alaska have that freedom [to discuss the issues in the questionnaire]."[7]

Judge Sigurd E. Murphy did not complete the questionnaire but submitted a letter, dated October 24, 2002, announcing his decision to "decline to respond to your questionnaire generally for the reasons set forth in the October 16, 2002 letter addressed to you from the Alaska Commission on Judicial

---

[7] Judge Pengilly subsequently retired from the bench.

Conduct." Judge Murphy also expressed his view that responding to the questionnaire would violate his own " 'Judges' Code' which I prepared and have given to attorneys and others interested in my view of the judicial ethics that I live by."

Judge Jane Kavour returned the questionnaire, checking "Decline" in response to each question. At the end of the questionnaire Judge Kavour wrote simply: "Based on advice from Judicial Conduct Commission in My State." No judge sought a formal advisory opinion from the Commission.

ARL PAC chose not to publish any of these responses; nor did it distribute a questionnaire to any of the ten judges who sought retention in the next general election, which took place in November 2004. Instead, on October 1, 2004, ARL PAC and Miller, "an individual and resident of the State of Alaska," filed a 42 U.S.C. § 1983 action in the United States District Court for the District of Alaska against eight named members of the Commission and six named members of the Bar, all sued in their official capacities. The Complaint raised First Amendment challenges to Alaska Canons 3E(1) and 5A(3)(d)(i) and (ii), asserting that the former was unconstitutional on its face and that both were unconstitutional as applied to the "2004 questionnaire."[8] ARL PAC and Miller also asserted that the Commission's enforcement policy of both canons, as expressed in Greenstein's October 16, 2002, letter, unconstitutionally chilled protected political speech. Alleging injury to Plaintiffs' rights to receive—and in ARL-PAC's case also to distribute—judicial campaign speech, the Complaint sought declaratory and injunctive relief, costs and attorneys' fees.

After ARL PAC voluntarily dismissed all Bar members except Defendant Van Goor, who heads the Bar's Disciplin-

---

[8]Although the Complaint repeatedly referred to the "2004 questionnaire," as noted, ARL PAC never distributed a questionnaire in 2004.

12890      ALASKA RIGHT TO LIFE V. FELDMAN

ary Commission, Van Goor filed a motion to dismiss the claims against him. The district court granted the motion, in light of Plaintiffs' concession that their lawsuit did not involve attorney-applicants and that Van Goor had no authority to enforce the Code against judicial officers.

The Commission and ARL PAC and Miller then filed cross-motions for summary judgment on the First Amendment challenges to Canons 3E(1) and 5A(3)(d)(i) and (ii). The district court held that ARL PAC and Miller's claims were justiciable and that abstention was "neither warranted nor appropriate." *ARL PAC v. Feldman*, 380 F. Supp. 2d 1080, 1082 (D. Alaska 2005). On the merits, the district court held that Canon 5A(3)(d)(i) and (ii) violated the First Amendment but that Canon 3E(1) was constitutional. *Id.* at 1083-84. In a post-judgment order, it denied ARL PAC and Miller's motion for costs and attorneys' fees pursuant to 42 U.S.C. § 1988 on grounds that their successful challenge to Canon 5A(3)(d)(i) and (ii) "was significantly compromised by their lack of success" in challenging the recusal clause in Canon 3E(1). In a separate order the district court granted in part Van Goor's § 1988 motion for costs and attorneys' fees.

The Commission timely appealed the district court's summary judgment invalidating Canon 5A(3)(d)(i) and (ii) in No. 05-35902. ARL PAC and Miller timely appealed the district court's summary judgment upholding Canon 3E(1), denying their motion for fees and costs against the Commission, and awarding fees and costs to Van Goor in No. 05-36027. After briefing for this appeal was complete, ARL PAC and Miller filed a motion to dismiss the portion of their appeal in No. 05-36027 challenging the district court's judgment as to the constitutionality of Canon 3E(1). In light of our conclusion that Plaintiffs' claims are not ripe and that the district court should have declined jurisdiction over their cause of action, we deny the motion as moot.

## II.

The district court had original jurisdiction under 28 U.S.C. § 1331. We have jurisdiction over the parties' timely cross-appeals under § 1291.

We review *de novo* a district court's grant of summary judgment, *Delta Sav. Bank v. United States*, 265 F.3d 1017, 1021 (9th Cir. 2001), including legal determinations regarding standing and ripeness, *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1093 (9th Cir. 2003). We review the grant or denial of attorneys' fees under 42 U.S.C. § 1988 for abuse of discretion. *Magg v. Wessler*, 993 F.2d 718, 719 (9th Cir. 1993).

## III.

Federal jurisdiction is limited to "actual 'cases' and 'controversies.' " *Allen v. Wright*, 468 U.S. 737, 750 (1984). This principle of justiciability has both constitutional and prudential components. *See id.* at 750-51 (explaining justiciability doctrines). Relevant here are the doctrines of standing and ripeness.

Article III standing is a "controlling element[ ] in the definition of a case or controversy." *Hein v. Freedom from Religion Found. Inc.*, ___ S. Ct. ___, 2007 WL 1803690, at *9 (U.S. June 25, 2007) (internal quotation marks omitted). At an "irreducible constitutional minimum," Article III standing requires proof (1) that the plaintiff suffered an injury in fact that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical;" (2) of a causal connection between that injury and the complained-of conduct; and (3) that a favorable decision will likely redress the alleged injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In addition to these Article III requirements of injury in fact, causation, and redressability, prudential standing concerns require that we consider, for example, whether the

alleged injury is more than a "mere generalized grievance," whether the plaintiff is asserting her own rights or the rights of third parties, and whether the claim "falls within the zone of interests to be protected or regulated by the constitutional guarantee in question." *See Johnson v. Stuart*, 702 F.2d 193, 196 (9th Cir. 1983) (internal quotation marks omitted).

Like standing, the ripeness doctrine has both constitutional and prudential components. *See Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 808 (2003) ("The ripeness doctrine is 'drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.' " (quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993))). For purposes of a preenforcement challenge such as ARL PAC and Miller's, the constitutional ripeness inquiry focuses on

> (1) whether the plaintiffs have articulated a concrete plan to violate the law in question, (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and (3) the history of past prosecution or enforcement under the challenged statute.

*Getman*, 328 F.3d at 1094 (internal quotation marks omitted).[9] Prudential ripeness, in turn, involves "two overarching considerations: the fitness of the issues for judicial review and the hardship to the parties of withholding court consideration." *Thomas*, 220 F.3d at 1141(internal quotation marks omitted).

___

[9]The constitutional component of ripeness often overlaps with the injury-in-fact prong of Article III standing. *See Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc) (referring to ripeness as "standing on a timeline"); *see also id.* at 1138-39 ("The constitutional component of the ripeness inquiry is often treated under the rubric of standing and, in many cases, ripeness coincides squarely with standing's injury in fact prong.").

For the reasons that follow, we conclude that the district court should have declined to exercise jurisdiction on prudential ripeness grounds, given the inadequately developed record and the absence of a showing that withholding jurisdiction would impose hardship on the parties. As a result, we need not reach the question of Plaintiffs' standing. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 66-67 (1997) (explaining that a court may properly assume standing in order to analyze mootness because both questions "go[ ] to the Article III jurisdiction of this Court and the courts below, not to the merits of the case").

### A.

**[1]** In considering whether the record before us is fit for review, we begin with the principle that a court cannot decide constitutional questions in a vacuum. *See Thomas*, 220 F.3d at 1141. While "pure legal questions that require little factual development are more likely to be ripe," a party bringing a preenforcement challenge must nonetheless present a "concrete factual situation . . . to delineate the boundaries of what conduct the government may or may not regulate without running afoul" of the Constitution. *San Diego Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1132 (9th Cir. 1996). We lack such a "concrete factual situation" here. Although Alaska Statute section 22.30.011(a)(3)(E) authorizes the Commission, on its own motion or upon receipt of a written complaint, to inquire into an allegation that a judge has acted in violation of the Code, the record here does not show that the Commission has so much as contemplated that such an inquiry might be warranted were a judge to respond to ARL PAC's questionnaire. No judge requested—and the Commission therefore did not issue—a formal advisory opinion on the propriety of responding to the questionnaire. Executive Director Greenstein's letter, which did not threaten investigation, at most constituted informal guidance and, therefore, under the Commission's own Rule of Procedure 19(d), had no legal effect.

12894          ALASKA RIGHT TO LIFE V. FELDMAN

Even if the Commission had initiated an inquiry against a judge who responded to ARL PAC's questionnaire and then recommended sanctions,[10] we would still lack any reason to expect the Alaska Supreme Court to adopt and act upon a recommendation that ran afoul of the First Amendment. Our only insight into the Alaska Supreme Court's likely construction of any of the challenged clauses is the commentary to Canon 5A(3)(d), which discusses a Seventh Circuit case that struck down, on First Amendment grounds, an Illinois canon that is similar but not identical to Canon 5A(3)(d). *See Buckley v. Ill. Judicial Inquiry Bd.*, 997 F.2d 224 (7th Cir. 1993). The commentary to Canon 5A(3)(d) concludes that "[t]he [Alaska] Code should be interpreted in a manner that does not infringe First Amendment rights," indicating a strong likelihood that the Alaska Supreme Court would construe the canon to avoid the constitutional concerns addressed in *Buckley* and *White*.

[2] The fact that Alaska's high court has not yet had an opportunity to construe the canons at issue here or to apply them to the speech ARL PAC and Miller hope to solicit further militates in favor of declining jurisdiction. *See Renne v. Geary*, 501 U.S. 312, 323 (1991) (explaining that "[p]ostponing consideration of the [constitutional] questions presented, until a more concrete controversy aries, also has the advantage of permitting the state courts further opportunity to construe [the challenged law], and perhaps in the process to materially alter the question to be decided" (internal quotation marks omitted)). Because only the Alaska Supreme Court has authority to impose disciplinary measures for violations of the Code, *see* Alaska Stat. §§ 22.30.011(d)(2), 22.30.070, it alone has the ultimate authority to construe and apply the provisions at issue here. On this record, an open question exists whether that court would act on a hypothetical

---

[10]As noted, upon the Commission's recommendation the Alaska Supreme Court may reprimand, suspend, or publicly or privately censure a judge; additional measures include removing or retiring the judge from office. Alaska Stat. § 22.30.011(d)(2).

recommendation by the Commission to discipline a judge
who responded to the questionnaire, let alone whether it
would do so on the basis of the specific provisions that ARL
PAC and Miller challenge. Declining jurisdiction not only
gives the Alaska Supreme Court the first opportunity to con-
strue the canons in the context of judicial campaign speech,
should the appropriate circumstances arise, but to do so in a
manner that comports with the United States Supreme Court's
decision in *White*. *See Christian Coal. of Alabama v. Cole*,
355 F.3d 1288, 1291 n.1 (11th Cir. 2004) (affirming district
court's dismissal for lack of jurisdiction in a similar challenge
and noting that the Alabama Supreme Court should have the
first opportunity to construe its code of judicial conduct in the
aftermath of *White*).

[3] Without a clearer showing that a judge would reason-
ably risk discipline by responding to the questionnaire, this
record is therefore unfit to review Plaintiffs' First Amendment
claims. *See Babbitt v. United Farm Workers Nat'l Union*, 442
U.S. 289, 304 (1979) (concluding, on prudential ripeness
grounds, that the district court should not have exercised juris-
diction when it was "impossible to know" whether the State
would apply the challenged statutory provision in the manner
plaintiffs alleged would implicate constitutional concerns and
refusing to adjudicate the constitutional claim based solely on
a "hypothesi[s] that such an event will come to pass"); *cf.
Duke Power Co. v. Carolina Envt'l Study Group, Inc.*, 438
U.S. 59, 81-82 (1978) (concluding that "[t]he prudential con-
siderations embodied in the ripeness doctrine" weighed in
favor of "prompt [federal court] resolution of the claims pre-
sented" when delaying adjudication would put the court in
" 'no better position later than we are now' to decide this
question" (quoting *Blanchette v. Conn. Gen. Ins. Co.*, 419
U.S. 102, 143-45 (1974))).

## B.

[4] Just as ARL PAC and Miller's failure to demonstrate a
likelihood of enforcement of the challenged canons against

the judicial speech they would like to solicit renders their suit presently unfit for review, it also weighs against a conclusion that withholding federal jurisdiction would impose hardship. In First Amendment contexts, the Supreme Court has recognized that the harm suffered by a party who restricts allegedly protected speech in order to avoid civil sanction or criminal penalty may warrant preenforcement review in some cases. *See, e.g., Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988) (concluding that a preenforcement challenge was justiciable when plaintiffs restricted their speech based on "an actual and well-founded fear that the law will be enforced against them"). A court may adopt this somewhat relaxed approach to justiciability, however, only upon a showing that the plaintiff "is immediately in danger of sustaining[ ] a direct injury as a result of [an executive or legislative] action." *Laird v. Tatum*, 408 U.S. 1, 12-13 (1972). There is no such showing here.

[5] In *San Diego Gun Rights Committee*, we concluded that the plaintiffs would not suffer hardship if we declined jurisdiction over their preenforcement challenge because they had not shown a credible threat of enforcement so as to justify judicial review. *See* 98 F.3d at 1132 (explaining that when "none of the plaintiffs have been charged under the [challenged] Act with any criminal violation" and did not "face a credible threat of prosecution," they could not demonstrate hardship sufficient to warrant jurisdiction). ARL PAC and Miller's claim of hardship is even weaker than that in *San Diego Gun Rights Committee*. Not only is there a lack of any credible threat of enforcement, but neither plaintiff is potentially subject to enforcement of the Code. Even with a more convincing showing that a *judge* reasonably risked discipline by responding to the questionnaire, "[t]he self-censorship door to standing does not open for every plaintiff. The potential plaintiff must have an 'actual or well-founded fear that the law will be enforced *against him or her*.' " *Getman*, 328 F.3d at 1095 (quoting *Am. Booksellers*, 484 U.S. at 393) (emphasis added). ARL PAC's decision not to circulate a 2004 question-

naire at most can be chalked up to futility rather than First
Amendment chill. Because the organization would not itself
have risked civil sanction or criminal penalty, it has not "suf-
fered the constitutionally recognized injury of self-
censorship." *Getman*, 320 F.3d at 1095; *cf. Am. Booksellers*,
484 U.S. at 392 (finding that plaintiffs suffered self-
censorship when the challenged statute was "aimed directly at
plaintiffs"); *Canatella v. California*, 304 F.3d 843, 855 (9th
Cir. 2002) (concluding that plaintiff attorney's challenge to
state bar statutes was ripe when he faced a credible threat of
future disciplinary proceedings so as to pose "ongoing harm
to the expressive rights of [other] California attorneys to the
extent they refrain from what [plaintiff] believes to be consti-
tutionally protected activity"); *ACLU v. Fla. Bar*, 999 F.2d
1486, 1492 (11th Cir. 1993) (holding that a judicial candidate
suffered the injury of self-censorship when defendant's threat-
ened enforcement of the challenged regulations "placed
[plaintiff] in the position of having to refrain from potentially
protected political speech in order to avoid possible disciplin-
ary action").

[6] Nor will delaying adjudication prejudice ARL PAC and
Miller's ability to vindicate their constitutional claims later,
with a better factual record. *See San Diego Gun Rights
Comm.*, 98 F.3d at 1133 (concluding that dismissal would not
create undue hardship because "Plaintiffs will have the oppor-
tunity to raise their constitutional objections . . . if and when
the government initiates a criminal prosecution against them
under the [challenged] statute").

IV.

[7] Our decision that the district court should have declined
jurisdiction renders moot ARL PAC and Miller's appeal from
the district court's order denying their motion for attorneys'
fees and costs against the Commission: because they are no
longer the prevailing parties they are not entitled to fees under
42 U.S.C. § 1988. Our jurisdictional holding also renders

moot their motion to dismiss the portion of their appeal from
the district court's judgment denying their challenge to Canon
3E(1).

The only remaining matter is ARL PAC and Miller's
appeal from the district court's order granting attorneys' fees
and costs to Van Goor. As an initial matter, we note that a
court may award attorneys' fees and costs even after dismiss-
ing for lack of jurisdiction. *See* 28 U.S.C. § 1919; *Gator.com
Corp. v. L.L. Bean Inc.*, 398 F.3d 1125, 1139 (9th Cir. 2005).

Section 1988 provides that "[i]n any action or proceeding
to enforce a provision of [§ 1983], . . . the court, in its discre-
tion, may allow the prevailing party . . . a reasonable attor-
ney's fee." A prevailing defendant may recover attorneys'
fees when a § 1983 plaintiff's claims are "groundless, without
foundation, frivolous, or unreasonable." *Karam v. City of Bur-
bank*, 352 F.3d 1188, 1195 (9th Cir. 2003) (internal quotation
marks omitted). "The terms 'frivolous', 'unreasonable' and
'without foundation' as used in this context do not have
appreciably different meanings." *Thomas v. Bible*, 983 F.2d
152, 154 n.2 (9th Cir. 1993).

**[8]** The district court did not abuse its discretion by award-
ing Van Goor attorneys' fees and costs. Because ARL PAC
never distributed its questionnaire to any attorney-applicants,
Van Goor never had an opportunity even to consider enforc-
ing the challenged canons, by way of his authority to enforce
Alaska Rule of Professional Conduct 8.2(b). The "result" of
the claims against Van Goor were therefore both "obvious . . .
[and] wholly without merit," *Karam*, 352 F.3d at 1195 (inter-
nal quotation marks and alteration omitted), entitling Van
Goor to fees. *See also Price v. Hawaii*, 939 F.2d 702, 709 (9th
Cir. 1991) (affirming a grant of attorneys' fees to the prevail-
ing defendant under § 1988 when the complaint "patently
failed to state a claim" and lacked any factual basis).

V.

ARL PAC and Miller's challenges to Canons 3E(1) and
5A(3)(d)(i) and (ii) are not ripe for federal review. The factual
record does not show that even one judge who was subject to
the challenged canons' enforcement in 2004 had a clear inten-
tion to violate them, that the Commission plans to enforce
these canons, or that the Alaska Supreme Court would inter-
pret them in a way that would restrict the speech ARL PAC
and Miller hope to solicit. Nor will delaying adjudication hin-
der ARL PAC and Miller's ability to bring their challenges
later with a more fully developed factual record. The next
general election in which any current judge will stand for
retention will take place in November 2008, leaving Plaintiffs
plenty of time to develop a stronger record and then to seek
review in either state or federal court, sufficiently in advance
of the election. Moreover, because neither ARL PAC nor Mil-
ler are themselves subject to the challenged canons, they face
no risk of self-censorship.

[9] We therefore vacate the district court's order granting
summary judgment and the judgment. In No. 05-35902, we
remand with instructions to dismiss the Plaintiffs' action. In
No. 05-36027, we affirm the district court's order granting
attorneys' fees and costs to Van Goor, deny Plaintiffs' chal-
lenge to the district court's order regarding the constitutional-
ity of Canon 3E(1), and deny as moot Plaintiffs' motion to
dismiss that portion of their appeal.

**VACATED and REMANDED IN PART; AFFIRMED
IN PART.**

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2007 Thomson/West.